Adams, J.
The case of the State of Ohio ex rel. Chas. W. Miller v. O. S. Brady, clerk of the city of Newark, and E. T. Rugg, treasurer.of the city of Newark, Ohio, is a proceeding in mandamus. The relator says that prior to the^federal census of 1890, and prior to July 1st, 1890, the city of Newark was a municipal corporation, organized under the laws of Ohio, and was a city of the fourth grade, second class. *510 That, by the census of 1890, and by the secretary of state’s report, or abstract of that census, Newark had more than ten thousand and less than twenty thousand inhabitants, to-wit: fourteen thousand three hundred and seventy. That the city council has never determined that it was inexpedient for the city to pass from one grade to another, and that the city council has never taken any action either way on the question of the expediency, or the want of expediency of such change in grade or class.
That W. A. Veach, J. B. Thomas, H. C. Cochran, and C. W. Miller constitute the board of elections in said city; and says that, by reason of certain acts of the legislature, enacted since the census of 1890, Newark has become a city of the third grade, second class.
That on July 1st, 1898, by order of the board of elections, a written order or certificate was issued, signed by the president and secretary of the board, certifying the various amounts due the members and officers of the board. That there are two hundred and sixteen dollars and sixty-six cents due to the relator for salary from June 1st, 1897, to July 1st, 1898, That the certificate was received by the clerk, who refuses to draw his warrant on the treasurer, and that the treasurer will refuse to pay, though the money is in the treasury of the city, unappropriated for other purposes, and applicable to the payment of the salaries of the relator and other members of the board.
A writ of mandamus is asked in favor of the relator, to compel the issue of a warrant, and the payment of the warrant for that amount of salary.
It is agreed that the allegations of the petition are true. That is, the case is submitted to this court as though the petition was an agreed statement of facts.
Under section 2926t, if Newark is a city of the third grade, second class, the salary of a member of the board is two hundred dollars per annum, and the secretary’s salary *511 is two hundred dollars per annum, and such additional sum per annum as the board may allow, not exceeding one hundred and fifty dollars.
On these facts we are to determine, as a matter cf law, whether Newark is a city of the fourth or third grade of the second .class, since June 1st, 1897. If a city of the third grade, relator is entitled to a peremptory writ. If of the fourth grade, he is not.
That the legislature may make a classification of cities for the purposes of legislation, based on population, and so that other cities may enter and become members of a particular class without the aid of additional legislation, is established by a long line of decisions of the supreme court. (State ex rel. v. Baker, 55 Ohio St., 1.)
Counsel for the defendant relies on the case of Hayes & Sons v. City of Cleveland, 55 Ohio St., 117. The opinion begins on page 123. I read the greater part of that opinion:
“On the question whether Cleveland is a city of the second grade, first class, we are of the opinion from the agreed case, that it is such city. Under a proviso contained in section 1549, Revised Statutes, the advancement of a city from the second grade to the first grade of its class, by increase of population, could be prevented by the action of its city council declaring it inexpedient to do so. This was done on February 15, 1892 The claim that this should have been done on or before July 1, 1891, is not tenable. The ‘official report’, referred to in section 1547, Revised Statutes, on which the population of a city is to be ascertained for the purpose of determining the class and grade to which it belongs, is not the report of the superintendent of the census, but the report of an officer of the state, desl ignated by law to make the report. This officer is the secretary of state, and the report is that which he is required by section 1617, Revised Statutes, to make of the name ‘of each municipal corporation’, its grade and class, and its population as ascertained by the preceding federal census.’ This report is required by the following section to be trans *512 ínitted to the general assembly at its next session thereafter. The section does not fix the time when the report is to be transmitted. This is ascertained by section 62, Revised Statutes, and must be on or before November 20th of each year, the time fixed for tbe making of all reports by state officers. The report was transmitted November 17th, 1891, as required by this section, and then became the official report, of which municipal corporations must take notice, and, before the first of the following July” (that would be July, 1892) “take steps to prevent advancement if by their population, thus shown, they would then advance, and they deem it inexpedient to do so, Hence, the action taken by the council was in due time, and the city remained, and is a city of the second grade, first class.”
The claim of counsel for the defendants is that the council of Newark had until July 1, 1892, to declare it inexpedient for the city to advance, under the provisions of section 1549, as it stood up to April 15, 1892.
Section 154.9 (the proviso which applies in this case), prior to April 15, 1892, read as follows:
“Provided, however, that if before the first day of July, in any year, council determined it to be inexpedient that a municipal corporation should pass into any other class or grade, under the operation of this section, and the preceding sections fifteen hundred and forty-seven and fifteen hundred and forty-eight, such municipal corporation shall remain in the class or grade in which it then may be, until it is advanced under other provisions of-this title.”
Under the provision of the statute counsel claim that the council of Newark had until July 1st, 1892, to declare it inexpedient for the city to advance in grade; that on April 15th, 1892, the legislature came to the aid of the city council, and, by the amendment of section 1549, as found in 89 'O. L., 302, prevented the advancement of the city until ■the council, by a two-thirds vote, declared such change of •class or grade to be expedient. By the statute, as it originally stood, the cities advanced unless the council declared it inexpedient for them to advance. By the amendment, *513 the cities did not advance in grade until the city council, by a two-thirds vote, declared it to be expedient.
It is apparent from an examination of the case in 55 Ohio St., from which I have just read, and section 1549 and the amendment to it, that they apply to the advancement of cities in grade or class by reason of growth in population alone, and not to a classification, or re-classification, of municipalities by the legislature. Has the legislature taken Newark from one grade to the other? Under seer tion 1548, as it stood prior to 1890, Newark was in the fourth grade, second class. Section 1548 was amended March 23rd, 1891. 88 O. L., page 160. I read the part of the statute relating to third and fourth grade cities. The beginning of the statute is:
“Existing corporations organized as cities of the second class, shall remain such until they become cities of the first class, and their grades, and the grades of those which may be, or may become, cities of the second class, shall be determined as follows: those which on the first day of July last, had, and those which on the fisrt day of July, in any year, have, when ascertained in the same way” (that is, by the official report of the secretary of state made from the federal census) “more than ten thousand, and less than twenty thousand inhabitants, shall constitute the third grade; * * * those which, on the first day of July last, had, and those which hereafter, on the first day of July, in any year, have less than ten thousand, and more than five thousand inhabitants, shall constitute the fourth grade.’’
It may be that this amendment, coming before the secrer tary of state’s report, made November 17, 1891, of the census of 1890, had no effect on the city of Newark; but that cannot be said of the amendments of February 10th, 1892, 89 O. L., 18, and of February 6, 1894, 91 O. L., 14, and of March 13, 1894, 91 O. L., 58, The amendment, found in 91[0. L., 58 is, I believe, the last amendment of that section, and that provides:
J. A. Flory, for Relator.
T. B. Fulton, for Respondents.
“Existing . corporations, organized as cities of the second class, shall remain such until they become cities of the first class, and their grades, and the grades of those which may be or may become cities of the second class, shall be determined as follows * * * those which, on the first day of July, A. D 1890, had, and those which, on the first day of July, in any year, have, when ascertained in the same way, more than ten thousand and less than twenty thousand inhabitants, shall constitute the third grade.”
It will be noticed that here, for the first time, the specific date, “July 1st, 1890,”is used. It says: “those which, on the first day of July, 1890, had, and those which, on the first day of July, in any year, have when ascertained in the same way” (that is, by the secretary of state’s report) “more than ten thousand and less than twenty thousand inhabitants, shall constitute the third grade.”
This is a definite, specific declaration of the legislature; a definite grading and classification, on the basis of population, as ascertained by the report of the secretary of state, and it was enacted more than two years after the publication of that report, and at a time when the legislature either had the knowledge or the means of knowing exactly what the secretary’s report contained; and at that time, the legislature saw fit to classify the municipalities of the state, and they have, by definite and certain language, described Newark as a city of the third grade.
We hold that that act of the legislature, and the admitted fact that Newark, by the census of 1890, as ascertained according to the provisions of section 1547, had a population of between ten thousand and twenty thousand, put Newark in the third grade, second class.
It follows that the relator is entitled to the peremptory writ as prayed for, and it is so ordered.